UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

KEITH TYRONE CUMMINGS,

        Plaintiff,                Case No. 2:13-cv-237

v.                                       Honorable Robert Holmes Bell

MICHIGAN DEPARTMENT OF
CORRECTIONS BUREAU OF HEALTH
CARE SERVICES,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Keith Tyrone Cummings, a state prisoner currently confined at the Saginaw Correctional Facility, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michigan Department of Corrections Bureau of Health Care Services, and Health Care Providers Dr. Brendon J. Sherry, J. Schad, R.N., Dr. Roger M. Gertach, and Laura Kinder, R.N. Plaintiff alleges that Defendants failed to provide him with appropriate medical care for his right knee.

Plaintiff alleges that Defendant Sherry misread x-ray results regarding arthritis and cartilage damage to Plaintiff's right knee. Plaintiff complains that Defendants Sherry, Kinder, and Schad have failed to provide Plaintiff with needed knee surgery or pain medications. Plaintiff claims that he suffers from acute pain as a result. Plaintiff further claims that Defendants Gertach and Sherry refused to run necessary tests on fluid extracted from Plaintiff's knee prior to refusing Plaintiff surgery or medication. Defendant Schad declined to address Plaintiff's concerns in responding to the step III grievances Plaintiff filed regarding his medical care.

Plaintiff attaches numerous grievances, grievance appeals, and responses as exhibits to his complaint. According to the step II response to grievance number MTU 12 02 0226 12d, Plaintiff was examined offsite on December 12, 2011, and four views of his right knee were done by x-ray. The x-rays were submitted for interpretation on January 6, 2012, and it was noted that soft tissue swelling was present in the prepatellar and suprapatellar bursa region to a mild degree. In addition, it was observed that the patella demonstrated a normal relationship to the intercondylar groove, although decreased joint space was seen in the medial compartment. In addition, mild arthritic changes were seen involving the anterior and posterior surface of the patella. However,

there was no evidence of an acute displaced fracture or acute osseous abnormality, and the knee articulating space was preserved. *See* docket #1-1, p. 18 of 49.

According to the step II response to grievance number MTU 12 02 0227 12d, Plaintiff had a medical appointment on December 14, 2011, during which Plaintiff's right knee was injected with methylprednisolone acetate, lidocaine, and bupivacaine. In addition, 10 ml of straw colored joint fluid was extracted from Plaintiff's knee. The electronic medical record indicated that "there was no evidence in the description/evaluation of the fluid removed to support laboratory testing." *See* docket #1-1, p. 26 of 49. Defendant Kinder, who responded to the step II grievance, concluded that Plaintiff was "being evaluated, treated, diagnostic testing conducted and monitored by the Medical Provider (MP)," who was responsible for determining the most appropriate treatment after taking into consideration all available information. *Id.* Defendant Kinder noted that the MP acted appropriately and that Plaintiff's disagreement with the treatment plan does not support a claim that he received inadequate treatment. *Id.*

The step II grievance response to MTU 12020228 by Defendant Kinder notes that Plaintiff was seen by the Medical Provider on December 13, 2011, and was still complaining of pain and difficulty extending his right knee, as well as putting weight on his right leg. Plaintiff described the pain as lateral to his knee, and complained that it felt like it was "catching." Plaintiff's x-rays were reviewed and were normal. Plaintiff stated that Motrin helped and requested a refill. An examination of Plaintiff's right knee showed a moderate amount of patellar effusion compared to his last visit and Plaintiff was able to extend his knee with encouragement, although Plaintiff was hesitant and patellar crepitus was present. The Medical Provider consulted with the site M.D. and arthrocentesis and steroid injection were scheduled. Plaintiff was given an ACE wrap for

compression and was advised to elevate his leg. *See* docket #1-1, p. 28 of 49. The electronic medical record also showed that on January 5, 2012, the Medical Provider inspected Plaintiff's right knee and found no gross effusion or erythema. Although Plaintiff reported tenderness with palpation, the Medical Provider noted that his responses to minimal palpation seemed hyper-exaggerated. Plaintiff's active range of motion appeared to be quite limited, with Plaintiff refusing to go past 60 degrees. However, with passive range of motion the Medical Provider was able to extend Plaintiff's knee to almost 10 - 15 degrees. The Medical Provider noted that Plaintiff displayed an exaggerated pain response to the passive range of motion. Finally, the Medical Provider noted that Plaintiff refused to bear any weight on his right leg. *Id.*

On January 8, 2012, the Radiologist's interpretation of Plaintiff's December 12, 2011, x-ray indicated that there was soft tissue swelling in the suprapatellar bursa region, mild arthritic changes of the patella, and early arthritic changes of the joint space and articulating surface. *Id.* On February 1, 2012, Plaintiff was seen by the supervising physician for continued knee pain. The doctor noted that Plaintiff's x-rays were negative except for patellar findings and that he was complaining of localized pain on the fibular insertion site of LCL (lateral collateral ligament). No heat, redness, effusion, crepitus, swelling, or instability were present. The doctor injected the trigger point, but as expected, it did nothing. The doctor emailed the Regional Medical Director for a second opinion. *Id.* On February 3, 2012, Plaintiff was seen by nursing staff after he requested a pain shot because his leg was "locking up." Plaintiff was examined and no redness, effusion, or swelling were noted. Plaintiff was holding his leg in a flexed position and when the nurse attempted to manually straighten the leg, Plaintiff writhed in pain or thrashed in the chair. The nurse concluded that there was "no swelling, redness, warmth, or effusion or instability of right knee joint." *Id.*

> The step III grievance response to MTU 12020228 by Defendant Schad states:
>
> All relevant information within the electronic medical record has been reviewed. Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal. Allegations are not substantiated. X-ray films are read by the Radiologist, a dictation is provided and issued to the Medical Provider. The Medical Provider then determines his plan of care based upon all evidence, to include reports, subjective complaints, objective evaluations, etc. A disagreement with the judgment of someone qualified and capable of making same does not support a claim of denial of care. No violations have been identified.

*See* docket #1-1, p. 27 of 49.

> The step III grievance response to MTU 12020230 by Defendant Schad noted:
>
> All relevant information within the electronic medical record has been reviewed. Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal. The Medical Provider referenced having another Department Physician assess the grievants [sic] knee on February 1, 2012. This was to occur approximately February 13, 2012 within the facility, however, the grievant transferred for alternate reasons. There is no support the Medical Provider indicated the grievant would be sent offsite for this evaluation. Allegations of falsification of documents or retaliation is not supported. Grievants [sic] needs continue to be appropriately assessed, evaluated and treated as determined medically indicated by qualified health care professionals. A disagreement with the judgment of someone qualified and capable of making same does not support a claim of denial of care.

*See* docket #1-1, p. 42 of 49.

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

**Discussion**

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections Bureau of Health Care Services. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections Bureau of Health Care Services.

As noted above, Plaintiff claims that the remaining Defendants violated his Eighth Amendment rights by denying him adequate treatment for his right knee. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts

or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). This case is factually distinguishable from the situation in *Moore v. Cheatham, et al.*, No. 13-1299 (6th Cir. Jan. 13, 2014), which was recently addressed by the Sixth Circuit. In *Moore*, the plaintiff, a prisoner,

suffered from a hydrocele for a number of years and was treated mainly with an order for "scrotal support." On December 1, 2008, Moore was taken to an off-site emergency room and then another hospital with a painful and swollen testicle. A urologist noted that Moore had an immense hydrocele and ordered medication to treat his pain and fever. The urologist advised the prison that he could perform a hydrocele repair when Moore's fever was gone. Moore was then returned to the prison. Moore's medical records show that he was seen by a nurse on December 3, 2008, and again on December 8, 2008, and that he was given pain medication and antibiotics as ordered by the doctor. On December 10, 2008, Moore was seen by a doctor who found that his hydrocele was "larger than a grapefruit." Moore was then sent to the hospital, where the inpatient review report stated that Plaintiff's left hemi-scrotum was the size of a volleyball. On December 11, 2008, Moore underwent surgery to repair the hydrocele. In reversing the district court's grant of summary judgment, the Sixth Circuit noted that a testicle swollen to the size of a volleyball, or even a grapefruit, is obviously a condition requiring the attention of a physician. The Sixth Circuit stated:

> The defendants do not suggest that they were unaware of the doctor's orders or of Moore's pain and requests for health services. Given the severity of Moore's condition, a refusal to provide medication and timely treatment could lead a reasonable trier of fact to conclude that prison officials exposed Moore to "undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009).

*Moore v. Cheatham*, No. 13-1299 (6th Cir. Jan. 13, 2014).

As noted above, Plaintiff's sole complaint is that Defendants' did not provide him with the specific treatment he desired based on his subjective complaints of pain in his right knee. However, as noted above, Plaintiff was seen by Medical Providers on numerous occasions and was

provided treatment in accordance with medical tests, x-rays, and physical evaluations regarding the condition of his right knee. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: April 16, 2014 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE